UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

CHRISTOPHER M. MURPHY,

                Plaintiff

                vs.

CITY OF ELMIRA, OTTAVIO CAMPA-
NELLA, MATTEW BUZZETTI, TIMO-.
THY OVERLY and JOSEPH MARTINO,

             Defendants
----------------------------------------------------------x

**COMPLAINT**

Case No.    **18 CV 6572** MAT

Plaintiff, Christopher M. Murphy, appearing ***pro se*** at this time, complaining of the Defendants above-named, as and for his Complaint, respectfully alleges and shows to this Court as follows:

## JURISDICTION & VENUE

(1) This action arises under the Constitution of the United States and, more particularly, the Fourth, Eighth, Ninth and Fourteenth Amendments thereto (U.S.Const., Amends. IV, VIII, IX and XIV § 1), as well as federal statutory law and, more particularly the Civil Rights Act, Title 42 of United States Code (42 U.S.C. § 1983).

(2) Based upon the foregoing, this Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3) and 1343(a)(4).

(3) Venue in the Western District of New York is proper and appropriate under

28 U.S.C. § 1408(1) and 28 U.S.C. § 1391(b).

## THE PARTIES

(4) At all times hereinafter mentioned, Plaintiff, Christopher M. Murphy, was a resident of the City of Elmira, County of Chemung and State of New York.    Since October of 2015, Plaintiff has resided in the Village of Bath, County of Steuben.

(5) The Defendant City of Elmira ("the City") is a municipal corporation and political subdivision of the State of New York, duly established, organized and existing under the laws of the State of New York and situated within the County of Chemung.

(6) Upon information and belief, John Ryan, Jr., was the City Attorney/Corporation Counsel for the City of Elmira.

(7) Upon information and belief, at all times hereinafter mentioned, Defendant Ottavio Campanella was Assistant Elmira City Attorney/Assistant Corporation Counsel in and for the City of Elmira.

(8) Upon information and belief, at all times hereinafter mentioned,  Defendant Matthew Buzzetti was the Assistant Elmira City Attorney.

(9) Upon information and belief, Defendant Matthew Buzzetti succeeded Defendant Ottavio Campanella in the post of Assistant City Attorney/Assistant Corporation Counsel for the City of Elmira.

(10) Upon information and belief, at various times hereinafter mentioned, Defendant Joseph Martino was the Assistant Fire Marshal and Code Inspec-

tor for the Bureau of Fire Prevention and Inspection Services for the City of El-mira.

(11) Upon information and belief, as hereinafter discussed, Defendant Jo-seph Martino was subsequently named or appointed Fire Marshal for the City of Elmira.

(12) Upon information and belief, at all times hereinafter mentioned, Defen-dant Timothy Overly was employed by the City of Elmira Fire Department as a Cap-tain and occasional Acting Deputy Chief of said Department.

(13) All of the individual Defendants named above are herein sued in both their respective official capacities,  as employees or agents of the City of Elmira, as well as their respective individual capacities or as individuals.

## THE FACTS

(14) On or about January 12, 2012, then-Elmira City Judge Thomas Ramich signed a search warrant, authorizing Elmira City Police and Code Enforcement Offi-cers to enter and search my home, located at 757 Linden Place in the City of Elmira, based on alleged probable cause to believe that there were or might be one or more residential code violations inside my home.

(15) This is a home that I had owned outright and free of any mortgage or in-cumbrance, and occupied continuously, for at least the preceding twenty-five years.

(16)   The search warrant signed by Judge Ramich was not a "no knock" war-

rant.  It was executed by SWAT team officers employed by the City of Elmira Police

Department ("the Elmira Police") in the early morning hours of January 20, 2012.

(17)  The SWAT team officers neither knocked or verbally announced their

presence or purpose, as specifically required by Criminal Procedure Law § 690.50(1),

before proceeding to bust down both my front door and my back door with battering

rams.   The officers also busted out two windows of my house - in order to gain en-

try to the house.

(18) In a flash - literally - heavily armed and armored SWAT team officers

were inside my home.  I shared the home with my girlfriend of many years, Barba-

ra Camilli.    At the time of this police invasion of our home, Barbara and I were in

our first-floor bedroom.

(19)  The SWAT team officers were all suited up with full body armor, in-

cluding helmets, goggles and body armor.   They were all armed with what appear-

ed to be long automatic or semi-automatic weapons.    All of these police weapons

were aimed directly at Barbara and me.

(20) In connection with this search, the SWAT officers did a lot of gratuitous

damage to our home.   The example that comes to mind is what they did to the front

door of the house.    After they busted the front door down using their ram, the door

was clearly out of the door frame or door way - and in no way impeded their access to

the interior of the home.  In fact, the front door was leaning on our living room couch

and quite far removed from the doorway.      Nonetheless, one of the officers brought

this ram into the living room and proceeded to pound away on this poor door - until it was reduced to little pieces and splinters.    This overkill on my front door was obviously gratuitous and unjustifiable rationally.

(21) The Defendants Martino and Overly made a number of deliberate false and fraudulent statements of material fact in affidavits that were submitted by the City - and, more specifically, by Defendant Campanella - in order to induce then-Judge Ramich to grant this search warrant.

(22) Upon information and belief, but for these material misstatements of fact made by Defendants Martino and Overly in sworn affidavits - and other false and misleading statements and claims made or orchestrated by Defendant Campanella - probable cause for the issuance of a search warrant would have been likely been lacking.

(23)  Taken in the big, the supporting affidavits and other papers drafted and submitted by Defendant Campanella in order to obtain this search warrant contained a number of false and misleading statements of fact, the collective or aggregate practical result of which was to present a factual picture that was erroneous, misleading and untrue.

(24) More to the point perhaps, the net overall effect of all of the false and fraudulent misstatements of material fact sworn to by the Defendants in affidavits submitted in support of the City's application for a search warrant was to fabricate a showing of probable cause - which did not exist in the real world

or in truth.

(25) Upon information and belief, these false, fraudulent and fundamentally misleading affidavits and documents were conceived, drafted and assembled by the Defendants Martino, Overly and Campanella, acting in concert and collaboration together.

(26) Upon information and belief, Defendant Campanella lacked any colorable lawful authority to file or prosecute any criminal charges under the state statute involved here (namely, Executive Law § 382[2]).      Only the elected District Attorney of Chemung County, Weeden Wetmore, had the lawful authority to file or prosecute criminal charges pursuant to this state statute.

(27)   As hereinafter more fully discussed, all of the evidence obtained by the City of Elmira in connection with the search of my home conducted on January 20, 2012 was later suppressed and excluded by then-Acting Elmira City Judge Scott Miller.

(28)   On or about February 2,  2012, then-Elmira City Fire Marshal William Wheeler signed and issued a "Notice and Order to Remedy Violation(s)("the Notice")," alleging that there were various residential code violations inside my home, located at 757 Linden Place in the City of Elmira in Chemung County.  The Notice was mailed to my home Elmira home. .

(29)   The Notice further advised that I had ten (10) days within which to remove, resolve or remedy all of the alleged residential code violations.

(30) Upon information and belief, this ten-day period or deadline for satisfactory removal, resolution or remediation of all of the all alleged code violations was arbitrarily chosen by the Defendants or one or some of them.

(31) A more or less identical Notice was signed and issued by then-Fire Marshal Wheeler on February 14, 2012 - and thereupon sent to me by mail.

(32)  As a matter of law, William Wheeler lacked any lawful authority to issue or sign either of these Notices - or any similar or equivalent Notices.

(33)  As a matter of law, both of the aforementioned Notices were  invalid and void *ab initio* - for reasons other than Wheeler's lack of authority to issue or sign them.

(34)  Presumably the most salient and easily explained ground rendering these two notices invalid and void *ab initio*, as a matter of law, goes to the ten-day deadline specified in the Notice for resolving or remedying all of the alleged code violations cited in the Notice.    New York appellate court decisions so hold - and expressly point out that the defect is fatal and jurisdictional.

(35)  This being the case, the purported Notice(s) issued and signed by former Elmira Fire Marshal Wheeler and mailed to me were both invalid and void *ab initio*, as a matter of law.

(36)  Notwithstanding this fact, the City of Elmira by Defendants Martino, Overly and Campanella filed misdemeanor criminal charges against me pursuant to Executive Law § 382(2) - based, ultimately, upon the alleged residential code viola-

tions specified in the two earlier purported Notices signed and issued over the signature of then-former Elmira Fire Marshal Wheeler.

(37)  The accusatory instrument or misdemeanor complaint charging me with this misdemeanor offenses was executed, signed and sworn to by Defendant Martino.    Upon information and belief, the document was drafted by Defendant Campanella.    This sworn written instrument contained a number of obviously deliberate false and fraudulent statements of material fact - the unmistakable aim of this being to fabricate a factual showing that would suggest the existence of probable cause to grant a search warrant or arrest warrant and also to suggest that criminal charges were justified and well-founded.        In truth and in reality, probable cause did not exist - either for a search warrant or an arrest warrant.   So too, there was in truth no probable cause or reasonable ground for filing or pursuing any criminal charges.

(38)  Quite apart from the non-existence of probable cause with regard to the underlying merits or substance of the criminal charges, the Elmira City Court also lacked jurisdiction to entertain or consider this criminal case.

(39)  As a matter of law, the due and timely service of a valid Notice and Order to Remedy Violation(s) - and the demonstrable failure or refusal of the recipient thereof to comply with such Notice and Order - constitute a jurisdictional prerequisite and condition precedent to the filing or prosecution of any criminal charges pursuant to Executive Law § 382(2), as a matter of law..

(40)    For at least the reasons cited above, the Elmira City Court lacked jurisdiction to entertain or consider any of the purported criminal charges instigated by the Defendants - based on the misdemeanor complaint executed by Defendant Martino that was filed with the Court on or about March 16, 2012. This jurisdictional deficiency was non-waivable and could not be cured.

(41) Nonetheless, I was thereafter arrested by Elmira Police officers on these criminal charges on May 9, 2012 and was required to post $500.00 cash bail in order to avoid pretrial incarceration.

(42)    The day after my initial court appearance in response to these criminal charges filed against me by the Defendants, my case was the subject of a banner headline and lengthy first-page story ("above the fold") in the Elmira *Star Gazette*.    This case was also the lead story on the local television news on both local network affiliate stations.

(43)    This irrationally excessive or over-the-top local press and media interrest and reporting with regard to this criminal case was clearly directly attributable to, and orchestrated by, the Defendants.    The press reporting contained a number of untrue, misleading and inflammatory statements and claims attributed to Defendant Campanella.    The clearly foreseeable consequence of this was to elevate this case to something akin to the City of Elmira's O.J. Simpson murder case.    I was depicted or described in an extremely unflattering and unfavorable light.    My "crime" was described or characterized in a way that unfairly and incorrectly connoted moral

turpitude or reprehensibility  - and clearly did this disingenuously and in bad faith.

(44)  Not surprisingly perhaps, the Defendants - especially Defendant Otto Campanella - are portrayed in a most favorable and flattering light.    Taken in the big, the Defendants and Defendant Campanella in particular milked this seemingly crazy interest in this case on the part of local press and media to squeeze every possible drop of self-congratulation out of this moment in the spotlight.

(45)  I think that, thoughtfully considered, the Defendants' actions with regard to this local press and media reporting, were wholly unjustified and unrelated to any legitimate, good faith,  principled, appropriate or remotely enlightened policy or practice.

(46) I could not imagine or picture Weeden Wetmore, the elected District Attorney of Chemung County, taking the actions or following any gameplan even remotely like the stuff we are talking about here.    As earlier noted, it is significant that all of these criminal charges were concocted and filed by Defendants employed by the City of Elmira.    By statute, Weeden is charged with a solemn duty that must guide his decisions - namely, to insure that, in any particular case or situation, justice will be done.   The City Defendants, on the other hand, are wholly unfettered and unbothered by any higher or more noble duties or obligations.  So they had no apparent reservations or hesitation about visiting the Draconian consequences that arrest and criminal prosecution entail on me.    Indeed, at the end of the day, it is, for these Defendants, the Draconian side effects that are the real

incentive or impetus.   It was not about any lofty or ethereal ideals or sentiments such as justice or the rule of law, but rather about putting the greatest and most gratifying hurt on me - gratifying for them, that is.   So, the difference between a nightmare ordeal and serendipity boiled down to who was making decisions and choices.    I do not have to resort to speculation to guess how Weeden Wetmore would go with these outrageous,  yet at the same time nonsensical, criminal char- ges.  I have always had a very amicable relationship with Weeden Wetmore.

(47)   Upon exhaustive research and efforts, I could not find a single reported state or federal case - from New York or any other state or district - in which an individual was criminally charged and prosecuted  on these facts, sim- ilar facts or equivalent facts.

(48)   The explanation for this might be suggested in the statutory scheme of Article 18 of the Executive Law - which draws a clear distinction between own- er-occupied, one- and two-family residences, on one hand, and all other structures or buildings, on the other. (See: Executive Law § 381[1])   This distinction is fur- ther reinforced and more firmly drawn and expanded upon in the cases.   There is, here, a bright-line test - by which to divide or distinguish cases and situations in- volving the matters presented in this case.    The test is simple to apply.    In one category is this case and this fact situation and others with more or less the same or similar material facts.   This is a binary proposition, by the way.    Door A or Door B.   In the other category are all other cases.    The inference to be drawn

here is that the material facts presented here distinguish the case from all other

cases.    Absent the more or less unique combination of facts that come togeth-

er in this particular case, the warmth of the law's zealous guardianship of the

individual rights at stake is not granted.       Cases that fall short in this respect

are all more or less the same - in the eyes of the law.

(49) The distinguishing facts of this case are simple to state:   all of the sup-

posed residential code violations cited by the Defendants were alleged to exist ex-

clusively *inside* my home.      No claim or showing was ever made of any possible

threat, danger or impact on the health, safety or welfare of the public or to the prop-

erty or person of any individual(s) other than my girlfriend and myself.    No incom-

petent persons or infants were in any way involved.

(50)   In the court papers that I filed and served in the criminal case, I specifi-

cally challenged or invited the prosecution to cite or point to even one case in which

an individual was criminally prosecuted on the same or comparable facts.     No such

case was ever cited by them and no attempt was made to refute or challenge my claim.

(51)   The Police Power of the State and its political subdivision is the ul-

timate source of a government's lawful authority to enact and enforce law, rules,

regulations and the like intended to protect and preserve the health, welfare, safe-

ty and morals of the public and the common good.

(52)   At the same time, one of the most fundamental and cherished rights

guaranteed under our federal Constitution is the right to acquire, possess, use and

enjoy our own property in any way we choose consistent with the rights of others and such limitation or restriction by the State as is absolutely necessary to protect the public welfare.

(53) The Due Process Clause of the Fourteenth Amendment prohibits any government entity or official from attempting to impose restrictions or limitations on the free use and full enjoyment of private property that are not reasonably connected with a legitimate government purpose or objective, including most notably the protection of public welfare, safety, health or morals pursuant to its broad police power.

(54) While it is beyond question that the State may properly require each citizen to conduct himself, and to so use his own property as to not unreasonably injure another or the property of another, the State is without any power to regulate or control matters that are purely and exclusively private.

(55) The government lacks any lawful authority or power to impose unnecessary or unreasonable restrictions on the full, free and lawful use or enjoyment of property under the guise or pretense of protecting the common good or public welfare.

(56) The foregoing principles and notions are controlling here. The government lacks the power or authority to regulate or dictate how people keep house in their own homes - at least in the absence of exceptional circumstances not remotely involved here. Such innocuous, private and housekeeping rela-

Page 13

ted technical residential code "violations" are not a proper or worthy concern of the government.     Consequently, the government lacks any lawful power to intrude into the private goings-on in an individual's own home.   Thus, the failure or refusal of an individual to remedy or correct any such alleged residential code "violations" is *ipso facto* of no legitimate concern of the government and, moreover, not subject to the authority or power of the government.

(57)   Under the statutory scheme of Article 18 of the Executive Law, the New York State Uniform Fire Prevention and Building Code ("Uniform Code"), is repository or compilation of the multitudinous standards, requirements, rules, specifications that represent the substantive underpinning of the procedural machinery of Article 18.

(58)   The Uniform Code is comprised of nine "subunits" - which deal with, *inter alia*, plumbing, electricity, etc.   Review of the provisions and particulars of these various subunits points up the obvious fact that they are incredibly prolix, hyper-technical and, oftentimes, picayune to an extent that is mind boggling.

(59) In my own case, for example, two separate misdemeanor counts or charges were based entirely on one window in my home office.     One of these had to do with having the wrong glass and putty.   The other had to do with some apparent difficulty in opening or closing the window.   These "violations" followed an inspection that took place on January 20th - in other words, when the weath-

(64)  In any event, it is respectfully submitted that, as a matter of law,  there existed no colorable or conceivable probable cause in this case - probable cause for a search warrant or an arrest warrant or to justify or defend the decision to file criminal charges.    Stated somewhat differently, but no less correctly or validly, there was, in this case,  a glaring and conspicuous absence of anything that might possibly be pointed to as grounds or justification for instigating any criminal charges.    It is utterly inconsequental in this regard that there might have been one or more res- dential code violations of the sort earlier discussed and under the circumstances earlier discussed.    Such "violations" are no more significant in the calculus of probable cause or criminal liability than the sin of leaving the toilet seat up in a house full of cranky women.    So, at the end of the day, the laundry list of sup- posed code violations said to exist inside my home - while probably deserving of high marks for ambition or industry - counts for exactly naught.    At best, this very long accusatory instrument suggests probable cause to suspect possi- ble residential code violations inside my home.    This being the case, it was forty miles of bad road going nowhere.

(65)  Assuming that one accepts or agrees with the premise which un- derpins the Defendants' position, it necessarily follows that even one or two trivial, innocuous and silly "violations"  - if not remedied in a timely way - would similarly justify or support the issuance of search warrants as well as arrest and criminal prosecution.

Page 16

(66)  Something else must be factored into the overall equation here
and that is the irrefutable fact confirmed throughout the historical record -
namely, that if police and law enforcement agencies and officers are grant-
ed expanded power or authority under the wording of a statute or rule, they
will ultimately and inevitably act to the outermost boundaries or limitations
of the power or authority conferred upon them by the language of the statute.

(67)  In any event, getting back to business of pleading,  then-Acting
Elmira City Judge Scott Miller dismissed all of the criminal charges filed against
me by the Defendants - outright and unconditionally - on August 12, 2015.

(68) Prior to that, he signed an order suppressing and excluding any and all
evidence obtained by the City of Elmira in connection with its search of my home -
ruling that the search was "unreasonable" based on the grossly excessive force used
by the SWAT officers on the morning of January 20, 2012.

(69)  Upon information and belief, all of the Defendants personally and
directly and actively participated in the planning and orchestration of this search -
and did this in concert with police personnel.    This is not speculative - because
there are numerous indications of the active personal involvement of the Defend-
ants or some of them in the planning, strategy and tactics to be followed and em-
ployed in the execution of the search warrant signed by former Judge Ramich on
January 12, 2012.        Almost certainly the Defendant who was most influential
in any such consultations or planning sessions would be Otto Campanella - upon

information and belief.

(70) For present purposes, the significance of the manner in which the SWAT team officers executed this search warrant is more or less just this: The extreme and disproportionately excessive force and wanton destructiveness exhibited in everything the police did that morning was not happenstance or spontaneous.

(71) Rather, there was clearly a deliberate and calculated agenda or plan involved - which the police officers followed that morning.    It is respectfully submitted that the brief for the police was to do things in a way that would disabuse me of any notion that I live with the license of a higher order of beings - and otherwise call me to account for a litany of past sins.    I can only speculate as to the subjective notions of any person who is not me, but it was clear beyond all peradventure that, whatever else these guys had in mind, they certainly wanted to do this search with the greatest possible force and destructiveness.

(72)  As mentioned above, upon information and belief, the Defendants or some of them personally, directly and actively participated in the planning, strategy and tactics of the police in connection with this search.    This being the case,  the inferences and evidence of personal, unlawful, impermissible, malicious and/or evil- mindedness that logically arise from the conduct of the police that morning are very relevant here.

(73) · Upon information and belief, all of the Defendants personally, directly and actively participated in the decision-making, orchestration and

Page 18

prosecution of the criminal case against me on a continuing and ongoing basis from the start of this case and continuing without interruption throughout the entire pendency of those proceedings.   This collaboration or joint action and joint decision-making was and is, by the yardstick of the law, an unlawful criminal conspiracy that meets all requirements to support a cause of action under this theory.

(74)   A couple of other examples:   the Defendants applied for and were granted by former City Judge Ramich a warrant for my arrest and they also specifically requested that substantial cash bail be required in order to avoid pretrial incarceration.   The court has considerable discretion on this, but the legal guidelines must guide the exercise of that discretion.

(75)   Nonetheless, thoughtful reading of all of the cases cited in the annotations to both McKinney's and C.L.S. New York Statutes - pursuant to Article 130 of the Criminal Procedure Law - provides a clear guide or explanation of the various factors, considerations, etc. that go into any determination of the appropriateness of using or permitting the use of the far less painful, harsh or drastic alternative of issuing an arrest warrant.

(76)   The legal yardstick or standard is clear and straightforward - and takes due account of various considerations and facts.    My criminal case and the circumstances surrounding it presented various facts, factors and considerations that are clearly material in any determination regarding the availability or suitability of a summons - as opposed to the alternative of requesting an arrest

Page 19

warrant - in a particular case,.

(77)  In my situation, every relevant legal fact and consideration set out in the cases lined up in support of the use of a summons.    Indeed, the decision to seek an arrest warrant and bail on these facts and circumstances - rather than go with the alternative of a summons - is more or less impossible to justify or defend rationally based on the law.

(78) I have no criminal record.   I own my home and have lived in it continuously for more than twenty-five years.    I have no guns - and this is something that the police checked out.       I have no history of violence or physical resistance to any law enforcement officer.     More importantly, all of these guys knew me - including former Judge Ramich.    I have known Otto Campanella for more than a decade.   He and I worked together in the same law firm some years back.     These people know that I have had legal training and experience - and that I would contest any charges in court.     They surely knew that the last thing I would ever do is run away - and spend the rest of my life hiding out somewhere to avoid a misdemeanor charge in a local criminal court.  So too, I am seventy-one now, probably sixty-eight at the time of this search.

(79)  Based on at least the things mentioned above, it is submitted that the Defendants' decision and election to request an arrest warrant and substantial cash bail was unquestionably motivated by personal, malicious, impermissible, evil-minded and/or mean-spirited aims and motives.

Page 20

(80)   The ulterior, personal, unlawful, malicious and/or evil-minded purpose and motives of the Defendants are also revealed and evidenced by actions that they took following the dismissal of the criminal charges by then-Acting City Judge Scott Miller.

(81)   With the unconditional dismissal of all of the criminal charges that the Defendants filed against me, my thinking was that this seemingly endless ordeal was finally over with.   A lot of this had to do with the fact that any and all of the evidence that the City of Elmira had and planned to use against me was excluded and suppressed by Judge Miller.   The consequence of such a ruling is that none of the evidence would be available in any future criminal, civil or administrative action or proceeding.

(82)   In any event, I felt that there would be no more problems or litigation with the City of Elmira or any of its agents or actors.

(83)   Nonetheless, I had been advised by someone who was in a position to know such things, that the City of Elmira - and some of the Defendants here - were unwilling to see me just walk away unscathed and unpunished.   With the benefit of hindsight, this should not have been surprising.

(84)   In any event, not long after Judge Miller dismissed all of the original charges, the Defendants or some of them decided to file new charges - this time against my girlfriend, Barbara, as well as me.      I never understood the logic of doing this - for at least the reason that the new charges were brought pursuant to the same state statutory provision (namely, Execu-

Page 21

tive Law § 382[2]).   Judge Miller's rulings in the earlier case clearly applied

with equal force to the same issues presented in the new case.        So, I never

got where the Defendants were coming from on this or what, if anything, they

mind.      In any event, Judge Miller dismissed all of the new charges in rather

short order.

     (85)   Not to be deterred in pursuit of whatever it is they are so dogged-

ly pursuing, the Defendants or some of them  decided to file new charges, once

again against Barbara and me – this time under a different state statute (namely,

Penal Law § 140.05).   The legal theory this time was trespass.

     (86) Judge Miller more or less immediately dismissed all of those new

charges.

     (87)   My long history of acrimonious encounters and heated disputes with

City of Elmira Code Enforcement and Fire Department personnel is attested to by

the class action lawsuit that I commenced in this Court against the City, its then-

Fire Marshal (the aforementioned William Wheeler) and two Code Enforcement

officers in 2010.   The matter was assigned Case No. 10-CV-6335T.   For reasons

that would require inordinately extensive explanation and that have no relevance

for present purposes, I voluntarily dismissed and discontinued the case - without

prejudice - pursuant to Rule 41(a).

     (88)   For present purposes, the significant thing would be my 43-page

Complaint in that action - which sets out a lot of facts and matters that attest to

the long history of hostility and rancor between me and these City actors.    To

be sure,  that class action lawsuit goes back ten years and might be dismissed as

ancient history.        Nonetheless, it is clear from everything in this case that the

mere passage of time did not mitigate or diminish the ill will, acrimony, malice

or vindictiveness on the part of any of these individuals - with regard to me.

(89) So too, I have had many encounters, dealings and disputes with City

of Elmira Code Enforcement officers during the period after the discontinuance

of the class action lawsuit and prior to the filing of criminal charges in 2012.

(90)    More or less without exception, in all of these encounters and

dealings, it was clear that I was being singled out and targeted for especially

harsh, punitive and burdensome treatment or enforcement action - that could

not be justified or accounted for rationally as legitimate governmental actions

or business.   In all or almost all of these dealings, it was obvious that the aim

and motive on their part was exclusively to penalize or hurt me - even if their

actions were cloaked in the guise of legitimate governmental duty or business.

(91)   It is also respectfully submitted that the actions of the Defendants vi-

olated my basic rights and protections in the nature of equal protection of the laws,

as these are guaranteed and embodied in the Fourteenth Amendment to the United

States Constitution.

(92) In a nutshell, this is a "class of one" selective enforcement/equal protection

case or claim.

Page 23

(93)  This cause of action clearly lies here because the Defendants have continuously and relentlessly singled me out and targeted me for different enforcement actions or treatment.          This different treatment that was applied or used against me was invariably more harsh, more onerous and burdensome and more unfavorable than any  enforcement action or treatment that the Defendants used or applied to any other individuals situated similar to me in all material respects.

(94) This is a "class of one" case for reasons other than those mentioned above.     I am the "one" who the Defendants decided to prosecute criminally on the basis of alleged residential code violations.     As discussed earlier, it appears that I am the only individual ever to be criminally prosecuted on these facts or on similar facts.     Not just in the City of Elmira, but anywhere else in the country - over the entire history of judicial decision.

(95)  For present purposes, the population or class of individuals situated similarly to me embraces, but is limited to, all residents and property owners and individuals who occupy premises as lessees or licensees.     All of these individuals are within the territorial jurisdiction and authority of the Defendants and other City of Elmira Code Enforcement officers or Elmira

(96) I am truly a "class of one" because I am the only person who has been and continues to be singled out and targeted for substantially different enforcement action or treatment - which is invariably significantly more harsh, stringent, burdensome and punitive.  No other individuals situated similar to

Page 24

me in all material respects have been subjected to this different enforcement action or treatment.

(97) The sharp difference in enforcement action or treatment presented in this case is wholly unrelated to any legitimate government purpose or policy and is without any rational justification or explanation.

(98) Upon information and belief, the sole motive and purpose of this selective enforcement of the law by the Defendants is personal animus and ill will, vindictiveness, evil-intent, malice and/or spitefulness.

(99)   The Defendants acted deliberately and unlawfully to deprive me of the right to equal protection of the law, guaranteed by the Fourteenth Amendment to the United States Constitution.

(100)   It is respectfully submitted that the constitutional rights that the Defendants deliberately violated in this case are fundamental to our free democratic society and system of laws and governance.   Taken in the big, the right at stake here is the right of any citizen to remain free of the horrendous ordeal of arrest and criminal prosecution in the absence of any probable cause to justify or support criminal charges and where, as here, it is clear that the government actors involved were acting out of wholly personal, evil-minded, vindictive, spiteful or capricious motives.   In other words, actions and motives that are wholly unrelated to their public duties or any legitimate governmental purpose, activity or business.

(101) The Defendants' actions complained of here were not taken in the

Page 25

spur of the moment or in circumstances in which immediate action was requir-
ed owing to real-world exigencies which made deliberation or reflection impos-
sible.   Rather, it is rather clear that the actions complained of were the result of
calculation and planning.

(102) The actions of the Defendants in this case were clearly an egregious
and shameful abuse of the enormous power reposed in them simply because they
are government officers or officials.

(103) By any rational or valid yardstick, the actions of the Defendants were
conscience-shocking.    From early on, their agenda and gameplan had nothing to
do with the lawful and proper exercise of their public duties or any legitimate law
enforcement or government purpose or action.     The idea of using criminal char-
ges and prosecution was motivated by wholly improper and entirely personal con-
siderations, rather than any lawful, reasonable, proper or justifiable motive or pur-
pose.

(104) So too, the common objective of the Defendants' efforts and collabora-
tion was, simply stated, to cause me to be subjected to arrest and criminal prosecu-
tion.    In the vast majority of cases, the accused should not be heard to bemoan the
painful and costly consequences that come with criminal charges and prosecution -
even if these are horrendous or nightmarish for him or her.     This case is decided-
ly different.

(105)   This case is conscience-shocking, shameful and outrageous because
the Defendants abused and took wrongful advantage of the enormous power and of-

Page 26

ficial authority reposed in them solely by reason of their government posts or positions to accomplish their unlawful, impermissible and personal agenda or aims.   So too, they did this again and again over an extended period of time.

(106) As alluded to earlier, many of the actions taken by the Defendants were clearly gratuitous and mean-spirited - and cannot be rationally justified or explained as any sort of legitimate or acceptable actions on the part of a government actor similarly situated.

(107)   Thoughtful consideration of everything in this case - the sum total of facts, evidence, stuff, etc., that is available for consideration in connection with this case - compels the logical inference that the driving force of the Defendants - and their ultimate - objective was to oppress and penalize me to the greatest possible extent.

(108)   It is respectfully submitted that the Defendants intentionally violated my right to be free of unreasonable searches and seizures, as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

(109)   In addition to the facts hereinabove set forth, certain facts presented in an action which is a companion case to this one (17-CV-6339-MAT), which is presently presided over by Magistrate Judge Payson, are also material to the claims and causes of action stated here.

(110) On June 5, 2014, I was arrested by Elmira Police officers pursuant to a bench warrant signed by Elmira City Judge Steven Forrest - which ac-

tion was connected to the criminal case discussed herein.

(111) In this earlier - presently pending - case, my claims and causes of action were based on the unlawful and excessive delay in releasing me from custody once my full cash bail had been posted and paid and all required papers and conditions were fully satisfied.

(112) My causes of action also arise from an unlawful strip search conducted before I was released from custody. This search was conducted approximately two hours after my bail had been posted and also after all of the deputies on the scene were aware of the fact that my bail had been posted and I had to be released. At the time of this search, the deputy who forced me to subject myself to this humiliating ordeal unquestionably knew that I was going to be released very soon and thus would not be booked into the jail. This being the case, the strip search was wholly unrelated to any legitimate governmental purpose or any legitimate jail policy or objective.

(113) The causes of action stated herein include a Fourth Amendment claim - the theory being that I was unlawfully "seized" in connection with my criminal case. Several Court of Appeals cases that I looked at clearly seem to endorse a broad and expansive interpretation of the Fourth Amendment notion of a "seizure."

(114) Pursuant to my Fourth Amendment claim in this case, there are some additional facts that strike me as material. In the companion case, I did

not challenge or attack the lawfulness or constitutional validity of my arrest on the morning of June 5, 2014.

(115) Nonetheless, I do so here.   As earlier alluded to, the Elmira City Court lacked jurisdiction to entertain or consider the criminal charges and prosecution purportedly commenced in 2012.   The reasons for this were discussed briefly earlier in this pleading.

(116)  Inasmuch as the Elmira City Court lacked jurisdiction over the criminal charges and proceedings, it necessarily follows that that court lacked any power to issue a bench warrant for my arrest - as a matter of pure law.

(117) This being the case, my Fourth Amendment cause of action in this case includes my unlawful arrest - or "seizure" - and the claim embraces any and all matters that arise as a result of this new matter.   If my arrest was unlawful, then it is likely that the actions and events which followed it must be reconsidered in light of this fact.

(118)  It is respectfully submitted that the Defendants entered into and engaged in an unlawful conspiracy in this case - and actively collaborated with each other with the objective of injuring me and violating my basic constitutional rights and protections.     I allege this is only in conclusory fashion here inasmuch as I am not prepared to properly plead the material facts and essential elements of that cause of action here.     I intend to file an Amended Complaint in the very near future.   I will make out my case for unlawful conspiracy in this

later pleading.

(119) All of the Defendants named herein actively and personally caused, participated in, contributed to and played a significant personal and active role in concocting, fabricating and/or orchestrating my arrest and the instigation and pro-secution of baseless criminal charges against me.

(120) The constitutional rights that the Defendants violated - directly re-ulting in the substantial injury and damage to me - were and are well-settled. To be sure, it is difficult to find reported United States Supreme Court or Second Cir-cuit of Appeals decision directly in point - but it is respectfully submitted that this is because the situation involved here will very rarely happen. This is especially so if the inquiry is fact-specific.

(121) Any rational government actor situated similarly to the Defendants would know and understand that the actions complained of here were and are un-lawful and unconstitutional - and well beyond his or her discretionary authority un-der the law.

(122) As the direct and necessary result of the unlawful and unconstitution-al actions of the Defendants, I was substantially injured, harmed and damaged. The injury that I suffered as the direct result of the unlawful actions of the Defendants in-cluded a great deal of emotional pain and suffering, mental distress, worry and anxi-ety, all of which was the direct and proximate result of the unlawful actions of the Defendants and the baseless criminal charges and prosecution that they instigated

Page 30

and perpetuated.    The emotional suffering, distress, worry, anxiety that the crim-

inal charges and case caused me extended over a long period of time - owing to the

the continued pendency of those proceedings.

(123)  This whole deal was an absolute nightmare for me - and also for my

girlfriend, Barbara.    The nightmare was made a lot worse by the incredible inter-

est and coverage of my case by the local press and media.    My case was the sub-

ject of a banner headline and lengthy first-page story in the Elmira *Star Gazette*.  My

was also the lead story on the local television news - on both affiliate network local

stations.

(124)  The articles and stories about this case were incredibly painful and

humiliating for me - and for Barbara.    I was depicted or portrayed in a very un-

favorable light and picture painted of my home was such as to cast me as a person

of a certain distinctive mold or type - and most assuredly denigrating and prejudi-

cial to me in any or all future dealings presumably.   Following the publication of

the initial local newspaper article and the broadcast of the television news report-

ing on my case, I was so emotionally upset and tormented by this that I stayed in

bed for at least three days.   From that day on, I did not leave my home unless it

was necessary for me to do so.

(125)  Flipping the script for a moment, the picture that is presented in

this press and media coverage of the Defendants - and Defendant Otto Campa-

nella in particular - is extremely favorable and flattering and, getting right down

to the real skinny, shamelessly self-promoting and self-congratulatory.    Upon

information and belief, and to the best of my recollection or knowledge,   Defen-

dant Campanella had never been the subject of anything remotely close to the re-

porting on this case.   He was a behind-the-scenes kind of guy.   Then, as is from

on high, me.    Upon information and belief, Defendant Campanella orchestrated

the press and media reporting on this case - and transformed a minor thing into a

major news event and story.    In so doing, he helped himself professionally and

politically - and this is something that is more or less a matter of record in light

of subsequent events..

(126)  The criminal case also caused me a great deal of worry and fear -

mostly because there was every indication that I would be convicted and senten-

ced to at least sixty (60) days in the Chemung County Jail.  For some people, the

prospect of incarceration - at least for a short period - would not cause such wor-

ry as I had.   I only know about me.     For me, the prospect of being put in jail

was terrifying and a source of continual worry.

(127)   Another significant consequence of the unlawful actions of the

Defendants in causing these criminal charges to be filed and prosecuted against

me was the fact, as it turned out,   I was the person who did at least ninety per-

cent of the work required to come up with a winning defense to these criminal

charges.      The defense that I created was, ultimately, wholly successful and

directly resultted in the unconditional dismissal of all of the criminal charges

filed against me by the Defendants.

(128)  Nonetheless, in order to come up with this defense and avoid finding myself wrongfully convicted and sent off to jail an enormous investment of time, effort, energy, mental torment, frustration and emotional drain was necessary.   I was not going to avoid conviction and jail if I did not concoct a successful defense.   The court papers, memoranda of law and the like that I filed and served in that case - that are part of the official record - were hundreds of pages long all told and cited and discussed many, many cases and authorities..  So, just a look at these papers bespeaks the enormous investment of time and effort required to produce them.

(129)  None of this work would have been necessary but for the unlawful and outrageous actions of the Defendants in instigating and pursuing these baseless and personal-animus and malice-driven criminal charges.  To be sure, it was my choice to invest all of the time and effort.       Nonetheless, had I not done all this work, I would probably have found myself wrongfully convicted and put in jail.   On the peculiar and compelling facts of this case, I respectfully submit that I am justly and properly entitled to reasonable appropriate monetary compensation and damages.

(130)  I made a conscious decision not to address or discuss possible affirmative defenses - most notably, absolute prosecutorial immunity and/or qualified immunity - in this initial pleading.    Nonetheless, I have looked at

Page 33

these matters and am wholly prepared to respond to any assertion of either or both of these defenses on the facts and on the law.

(130)   For at least the reasons and facts herein set forth, it is respectfully submitted that, by their unlawful, unconstitutional and malice-driven actions, the Defendants intentionally violated my rights as follows:

[a]  my right to the protection of the guarantee of substantive due process of law, as embodied in the Fourteenth Amendment to the United States Constitution;

[b] my right to the equal protection of the law, and the derivative protection against arbitrary, discriminatory and unlawful selective enforcement of the law, guaranteed under the Fourteenth Amendment to the United States Constitution; and

[c] my right to be free of unreasonable searches and seizures, guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

(131)   Pursuant to F.R.Civ.Pr., Rule 38(b), I respectfully demand trial by jury as to any and all issues so triable as of right.

(132)   I declare under pain and penalty of perjury that all of the above is true and correct of my own personal knowledge, except as to those matters alleged to be true upon information and belief and, as to those matters, I verily believe them to be true and correct.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests judgment against the Defendants for at least the following relief, to wit:

[a] the sum of Fifty Thousand ($50,000.00) Dollars in compensatory damages as against Defendant City of Elmira;

[b] the sum of Fifty Thousand ($50,000.00) Dollars in compensatory damages against Defendants Ottavio Campanella, Joseph Martino, Timothy Overly and Matthew Buzzetti, and each and all of them, jointly and severally, in their respective official capacities as employees, officers, officials or agents of the Defendant City of Elmira;

[c] the sum of Fifty Thousand ($50,000.00) Dollars in compensatory damages against Defendants Ottavio Campanella, Joseph Martino, Timothy Overly and Matthew Buzzetti, and each and all of them, jointly and severally, in their respective individual capacities;

[d] the sum of One Hundred Thousand ($100,000.00) Dollars in punitive damages against Defendants Ottavio Campanella, Joseph Martino, Timothy Overly and Matthew Buzzetti, and each and all of them, jointly and severally, in their respective individual capacities;

[e] granting Plaintiff's reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, as and when he retains an attorney or attorneys or a law firm to represent him in this action;

[f] prejudgment interest as mandated or recoverable pursuant to the provisions of Article 50 of the New York Civil Practice Law and Rules and/or pursuant to federal law, practice or procedure;

[g] awarding Plaintiff the costs and disbursements of this action, after first deducting and remitting to the Clerk of this Court any and all filing fees or charges due and payable to the Court by virtue of Plaintiff's permission to proceed *in forma pauperis*; and

[h] granting Plaintiff such additional and further relief as may be equitable and proper to this Court.

Date: August 8, 2018

Signed and respectfully submitted by:

Christopher M. Murphy
Plaintiff, appearing pro se
Residence and Post Office Address:
105 Geneva Street, Apartment 237
Bath, New York 14810
Telephone: (607) 664-6717

Page 36

18 CV 6572 MAT

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Murphy, Christopher Michael | City of Elmira; Ottavio Campanella, Joseph Martino, Timothy Overly and Matthew Buzzetti, |

**(b)** County of Residence of First Listed Plaintiff    Steuben
       *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Chemung
       *(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Jeremy Hourihan, Esq.,   Barclay Damon, LLP, 243 Lake Street, Elmira, New York 14901

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question   *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |     Product Liability | |     28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |     Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|     & Enforcement of Judgment |     Slander |     Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |     Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |     Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark |     Corrupt Organizations |
|     Student Loans | ☐ 340 Marine |     Injury Product | | | ☐ 480 Consumer Credit |
|     (Excl. Veterans) | ☐ 345 Marine Product |     Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |     Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |     Act | ☐ 862 Black Lung (923) |     Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |     Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |     Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |     Injury | ☐ 385 Property Damage |     Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |     Product Liability | ☐ 790 Other Labor Litigation | |     Act |
| |     Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |     Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |     Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting |     Sentence | |     or Defendant) |     Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment |     **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | |     26 USC 7609 |     State Statutes |
| ☐ 245 Tort Product Liability |     Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| |     Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |     Alien Detainee | | |
| |     Other | ☐ 560 Civil Detainee - |     (Prisoner Petition) | | |
| | ☐ 448 Education |     Conditions of | ☐ 465 Other Immigration | | |
| | |     Confinement |     Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC § 1983

Brief description of cause:
Claim for monetary damages for injuries resulting from violations of federal constitutional rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE   Magistrate Judge Payson     DOCKET NUMBER   17-CV-6339-MAT

DATE
08/03/2018

SIGNATURE OF ATTORNEY OF RECORD
*Christop M Murph*

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE