UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---

CHRISTOPHER M. MURPHY,

                Plaintiff,        **No. 6:18-cv-06572(MAT)**
                                                **DECISION AND ORDER**
       -vs-

CITY OF ELMIRA, OTTAVIO CAMPANELLA,
MATTHEW BUZZETTI, TIMOTHY OVERLY,
and JOSEPH MARTINO,

                Defendants.
---

**I.   Introduction**

Proceeding <u>pro se</u>, Christopher M. Murphy (" Murphy" or "Plaintiff") instituted this action on August 10, 2018, against defendants the City of Elmira ("the City"), Elmira Assistant City Attorney Ottavio Campanella ("ACA Campanella"), Elmira Assistant City Attorney Matthew Buzzetti ("ACA Buzzetti"), Elmira Fire Department Captain Timothy Overly ("Captain Overly"), and Elmira Assistant Fire Marshal and Code Inspector Joseph Martino ("Inspector Martino").[1] Plaintiff alleges violations of his Fourth Amendment right to be free from unlawful searches and seizures and his Fourteenth Amendment rights to due process and equal protection of the laws. The Court granted Plaintiff's motion to proceed <u>in forma pauperis</u> ("IFP") under 28 U.S.C. § 1915(a) and reviewed the

---

[1] ACA Campanella, ACA Buzzetti, Captain Overly, and Inspector Martino are hereinafter referred to collectively as the "Individual Defendants."

complaint as required by 28 U.S.C. § 1915(e)(2) ("Section 1915(e)(2)").

In a Decision and Order dated August 21, 2018, the Court allowed the following claims to proceed: the Fourth Amendment claim for malicious prosecution and the Fourteenth Amendment equal protection claim. The Court found that the claims against ACA Buzzetti failed to adequately allege this defendant's personal involvement in any constitutional violations, and that the claims against the City failed to allege an official municipal policy or custom. The Court dismissed those claims without prejudice with leave to replead. Finally, the Court dismissed the following claims with prejudice: the official capacity claims against the individual defendants; the Fourth Amendment claims for unlawful search, excessive use of force, and false arrest; and the substantive due process claim. Plaintiff was given until September 21, 2018, to file an amended complaint curing the pleading deficiencies identified in the claims dismissed without prejudice.

Plaintiff timely filed a proposed amended complaint, and the Court screened it as required. In a Decision and Order dated June 19, 2019, the Court noted that while the proposed amended complaint included an additional twenty-nine pages, it nevertheless failed to plainly set out allegations in a manner that cured the deficiencies previously identified. Finding that it did not comply with Federal Rule of Civil Procedure 8 ("Rule 8"), the Court declined to file

it. However, the Court granted Plaintiff one final opportunity to file an amended complaint.

Plaintiff timely filed a second proposed amended complaint, and the Court has screened it in accordance with Section 1915(e)(2). For the reasons discussed below, the Court dismisses the municipal liability claim against the City with prejudice but will allow ACA Buzzetti to remain as a defendant.

**II. Standard Under Section 1915(e)(2)**

Under Section 1915(e)(2), the Court must conduct an initial screening of a pro se litigant's complaint and must dismiss if it is "frivolous or malicious"; "fails to state a claim upon which relief may be granted"; or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 759 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). In order to state a claim upon which relief may be granted, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Iqbal") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("Twombly")). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

(citing Twombly, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quoting Twombly, 550 U.S. at 557 (brackets omitted in original; quotation marks omitted).

**III. Screening of the Second Proposed Amended Complaint**

    **A.    The Municipal Liability Claim**

        **1.    Applicable Legal Principles**

Murphy brings all of his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes "a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." Carey v. Piphus, 435 U.S. 247, 253 (1978) (internal quotation omitted).

In Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978), the Supreme Court held that municipalities and other bodies of local government are "persons" within the meaning of § 1983 and, as such, they may be sued directly if they are alleged to have caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. In order to prevail on a Section 1983 claim against a municipality based on the allegedly unconstitutional acts of a public official, a plaintiff is required to prove the following: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation;

(4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The "official policy" element "can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" Id. (quotation omitted and emphasis added); see also Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006).

"The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." Newton v. City of N.Y., 566 F. Supp.2d 256, 271, nn. 93 & 94 (S.D.N.Y. 2008) (citing Monell, 436 U.S. at 690; Pembaur, 475 U.S. at 480-81; other citations omitted). In addition, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997) (citations omitted).

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible

inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order) (citing Vives v. City of N.Y., 524 F.3d 346, 350 (2d Cir. 2008) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Nonetheless, it is well settled that "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." Newton, 566 F. Supp.2d at 271 & n.92 (citing Tuttle, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in Monell.") (footnote omitted)).

2. **Analysis**

Plaintiff alleges that "[t]he City of Elmira had and has a long-standing, persistent, affirmative policy, custom, usage and practice ('the City's custom') with respect to residential code violations, calling for, endorsing, condoning, approving and, indeed, encouraging heavyhanded, harsh, punitive, intrusive and oppressive residential code enforcement policies, practices and

tactics by its Code Enforcement officers, police and fire department personnel, supervisors and other subordinate officials and officers." Second Proposed Amended Complaint ("2nd PAC") (ECF #9), ¶ 74; see also id. ¶¶ 75, 78, 84, 86, 102 (making essentially the same allegations). Plaintiff asserts that the City's mayor was the "final policymaker" with regard to housing code enforcement and suggests that her public statements establish the existence of a municipal policy or custom. See 2nd PAC (ECF #9), ¶ 86 (noting that in an interview, Mayor Skidmore said that "code enforcement is [her] ticket' – the unmistakable implication being that she stood for vigorous, aggressive and stringent enforcement of the laws and ordinances relating to code enforcement. . . .").

A complaint fails to state a claim when it offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" Twombly, 550 U.S. at 555. Plaintiff's amended complaint consists of nothing more than the repeated recitation of the words "custom" and "policy," along with various synonyms for them, which are then described with a barrage of adjectives. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

However, even assuming that Plaintiff plausibly identified a municipal policy by asserting that the Mayor "stood for vigorous, aggressive and stringent enforcement of the laws and ordinances

relating to code enforcement" id., this does not warrant, much less compel, an inference that the manner in which the City enforces its housing code deprived Plaintiff or anyone else of a constitutional right. It is true that "municipal liability does not lie only where the official policy or ordinance is itself unconstitutional." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004) (citations omitted). Nevertheless, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Tuttle, 471 U.S. at 823–24. The Court is cognizant that at the pleading stage, Plaintiff need not come forward with proof; however, the fact remains that Plaintiff's allegations focus solely on his own experiences with City code enforcement and his personal disagreements with ACA Campanella. This is plainly insufficient under Monell. See Berry v. Vill. of Millbrook, 815 F. Supp.2d 711, 720 (S.D.N.Y. 2011) (finding that the plaintiff had not stated a Monell claim where he had "not suggested that any municipal policymaker or municipal policy or custom was responsible for violations of any litigants' rights apart from [his] own alleged experience, and '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof it was

caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker'") (quoting Tuttle, 471 U.S. at 823-24; citing Connick v. Thompson, 131 S. Ct. 1350, 1356 (2011) (noting that a municipal office may not be held liable under § 1983 for failure to train based on a single constitutional violation)); see also Dellutri v. Vill. of Elmsford, 895 F. Supp.2d 555, 566 (S.D.N.Y. 2012) (dismissing Monell claim where the plaintiff's "request for relief arises solely from the allegation that certain municipal employees—the Building Inspectors, Village Attorney, and Judge Leone—violated [the plaintiff]'s rights") (citing Brown, 520 U.S. at 403; other citations omitted); McLaurin v. New Rochelle Police Officers, 373 F. Supp.2d 385, 401 (S.D.N.Y. 2005), ("Viewing the allegations of the complaint most favorably to the plaintiff, it appears that he is trying to plead the existence of a widespread practice of abusing men of color who date white women. However, he does so only in conclusory fashion, without any supporting factual allegations except those relating to his own situation. If indeed this is the sort of 'policy' on which plaintiff relies, his complaint cannot survive . . . because one man's experience does not make a policy."), aff'd in part, vacated in part on other grounds, remanded sub nom., McLaurin v. Falcone, No. 05-4849-CV, 2007 WL 247728 (2d Cir. Jan. 25, 2007); Birmingham v. Ogden, 70 F. Supp.2d 353, 373 (S.D.N.Y. 1999) ("[T]he only fair inference is that what

happened to plaintiff (assuming things occurred as he claims) was unique to him—a deeply personal vendetta carried out by persons who were out to get him. That is not municipal action taken pursuant to policy or practice—unless plaintiff were to present this court with evidence that Chief Ogden and Mayor DeStefano and their cronies make it a practice to cook up disciplinary charges against outspoken police officers in order to procure their dismissal.").

**B. Personal Involvement by ACA Buzzetti**

To maintain a civil rights action against an individual defendant under Section 1983, "a plaintiff must establish a given defendant's personal involvement in the claimed violation." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004). A defendant may not be held liable merely because he or she held a high position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

Plaintiff has alleged that on June 24, 2015, he and his girlfriend were arrested and charged with trespass pursuant to New York Penal Law § 140.05, "at the personal and deliberate direction of Insp. Martino, acting in collaboration and concert with ACA Buzzetti[.]" 2nd PAC, ¶ 44. These charges eventually were dismissed sometime after August 12, 2015. Id., ¶ 49. He also alleges that on September 2, 2015, he and his girlfriend were arrested on misdemeanor complaints "personally prepared and drafted by ACA Buzzetti, acting jointly in concert with Insp. Martino, both of

whom were personally aware . . . that the City Attorney's Office lacked the lawful authority to file or prosecute any criminal charges under this state statute." Id. ¶ 51; see also id. ¶¶ 50, 52-62. These charges were unconditionally dismissed sometime after September 9, 2015. Id. ¶ 63. On November 3, 2015, Plaintiff and his girlfriend were arrested and charged with trespass pursuant to New York Penal Law § 140.05, "at the direct, personal and deliberate direction of ACA Buzzetti and Insp. Martino, acting jointly and in concert. . . ." Id. ¶ 64; see also id. ¶¶ 65-68, 70. These charges were dismissed unconditionally. Id. ¶ 69.

The Court finds that Plaintiff has sufficiently set forth specific allegations as to how ACA Buzzetti was involved in initiating various criminal prosecutions against Plaintiff and his girlfriend. Accordingly, the Court will allow the malicious prosecution claim against ACA Buzzetti to proceed to service.

**C. Summary**

The Court finds that Plaintiff has failed to state a plausible Monell claim against the City. Therefore, that claim is dismissed with prejudice.

The Court also determines that Plaintiff has plausibly alleged ACA Buzzetti's personal involvement in the claim for malicious prosecution. Therefore, the Court will allow the malicious prosecution claim to proceed against all of the Individual Defendants.

As stated in its previous screening order, the Court has allowed the equal protection claim to proceed to service.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Monell claim is dismissed with prejudice without leave to plead. It is further

**ORDERED** that the malicious prosecution claim and equal protection claims may proceed to service. In so ordering, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. It is further

**ORDERED** that the Clerk of Court is directed to issue Summonses to the individuals and entities named in the caption. It is further

**ORDERED** that the United States Marshals Service shall serve copies of the Summonses; copies of the Second Proposed Amended Complaint; and copies of this Decision and Order upon the named defendants without Plaintiff's payment therefor, any unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor.

**ALL OF THE ABOVE IS SO ORDERED.**

*s/ Michael A. Telesca*

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 12, 2020
Rochester, New York.