UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER M. MURPHY,

                    Plaintiff,

        v.

CITY OF ELMIRA, et al.,

                 Defendants.

_____

Case # 18-CV-6572-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff Christopher M. Murphy ("Plaintiff" or "Murphy") filed this 42 U.S.C. § 1983 action against Defendants Ottavio Campanella ("Campanella"), Matthew Buzzetti ("Buzzetti"), Timothy Overly ("Overly"), Joseph Martino ("Martino"), and the City of Elmira ("Elmira") (collectively, "Defendants"). *See* ECF No. 1. After a screening pursuant to 28 U.S.C. § 1915(e) (ECF No. 3), a subsequent amended complaint (ECF No. 9), and another screening (ECF No. 10), Plaintiff's remaining claims include Fourth Amendment malicious prosecution claims and Fourteenth Amendment equal protection claims against Campanella, Buzzetti, Martino, and Overly in connection with two sets of legal proceedings they allegedly pursued against Plaintiff. *See* ECF No. 10 at 11, 12.

Presently before the Court is Defendants' motion to dismiss, or alternatively, for summary judgment (ECF No. 86). For the reasons set forth below, this Court construes Defendants' motion as a motion for summary judgment. This motion is granted with respect to all of Plaintiff's equal protection claims and his malicious prosecution claims against Buzzetti and Overly. The motion is granted in part with respect to Plaintiff's malicious prosecution claims against Campanella and Martino. Plaintiff's request for additional discovery under Rule 56(d) is denied because he has

already had adequate opportunity to conduct discovery.  The remainder of Defendants' motion is denied.

## BACKGROUND[1]

Plaintiff's claims arise from two legal proceedings that Elmira officials initiated against him.  The first set of legal proceedings pertain to Plaintiff's arrest and prosecution for several misdemeanors relating to the condition of his property in 2012 (the "2012 Proceedings").  The second set pertains to Plaintiff's three arrests and subsequent prosecution for multiple incidents of alleged trespassing on the same property in 2015 (the "2015 Proceedings").

In July 2011, the Elmira Fire Department received a call reporting the smell of natural gas in the area of 757 Linden Place (the "Property").  ECF No. 100-1 ¶ 1.  Overly, the Fire Chief and Acting Deputy Chief at the time, responded to the call.  *Id*.  Defendants claim that, upon assessing several purportedly dangerous conditions on the Property, Overly deemed it unfit for human habitation and directed Plaintiff to vacate the premises.  ECF No. 86-17 ¶ 1.  Plaintiff disputes that the condition of the property violated any applicable laws, and claims that Overly merely told him that he could not be on the property outside of daylight hours.  ECF No. 100 ¶¶ 89-93.  During this time, Campanella was an Assistant Corporation Counsel for the City of Elmira and claims to have been deputized by the Chemung County District Attorney to prosecute certain charges relating to property conditions.  ECF No. 86-17 ¶ 25.  Plaintiff disputes Campanella's authority to prosecute the 2012 Proceedings.  ECF No. 100-1 ¶ 25.

---

[1] This Court takes the following facts from Defendants' statement of material facts (ECF No. 86-17), Plaintiff's response to Defendants' statement of material facts (ECF No. 100-1), Plaintiff's affidavit in opposition to Defendants' motion for summary judgment (ECF No. 100), and each document's supporting material.  Considering Plaintiff's *pro se* status, this Court may consider the material facts he has set forth in his affidavit, despite not technically complying with Local Rule 56.  *See Wali v. One Source Co*., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions.").

After Overly's visit, Plaintiff corresponded with Campanella regarding the condition of the Property and Plaintiff's status as its occupant.  ECF No. 100-1 ¶ 4.  Martino, the Assistant Fire Marshall and Code Inspector for Elmira, also visited the Property to observe its condition.  ECF No. 100 ¶ 3.  After a period of time, Campanella and Plaintiff stopped attempting to remedy the alleged issues with the Property.  *Id.* ¶ 6.  In response, Campanella initiated the 2012 Proceedings by seeking a search warrant for the Property.  ECF No. 86-17 ¶ 7.  Plaintiff claims that Campanella knowingly lied and fabricated evidence in order to get the warrant.  ECF No. 100 ¶¶ 363, 374.  In January 2012, the Property was searched.  ECF No. 100-1 ¶ 7.

In March 2012, Martino signed a court information charging Plaintiff with ten misdemeanors under the New York State Property Maintenance Code for the purported issues with the Property.  *Id.* ¶ 8.  Plaintiff was arrested on these charges.  *Id.* ¶¶ 8-10.  After his arrest, Plaintiff claims that Campanella requested an order from Elmira City Judge Steven Forrest prohibiting Plaintiff from residing on the Property.  ECF No. 100 ¶ 71.  Plaintiff also claims that this request was denied, and that Judge Forrest expressly stated that Plaintiff was allowed full access to the Property.  *Id.* ¶¶ 71-75.  Martino was allegedly in court when Judge Forrest issued this order.  *Id.* ¶ 110.  In 2013, Campanella stepped down from his role as an Assistant Corporation Counsel and handed over the duties relating to the 2012 Proceedings to Buzzetti, his replacement.  *See* ECF No. 86-12 ¶ 3; ECF No. 86-13 ¶ 3.  Plaintiff alleges that the 2012 Proceedings ultimately terminated in August 2015, when Elmira City Judge Scott Miller found that the 2012 search of the Property was unconstitutional and based entirely on bad-faith, and accordingly dismissed all charges against Plaintiff.  *Id.* ¶¶ 32, 43, 50.

The 2015 Proceedings began after Judge Forrest's aforementioned order, but before the resolution of the 2012 Proceedings, when Plaintiff was caught occupying the Property on multiple

occasions.  In June 2015, Defendants claim that the Property was placarded as unfit for human habitation, as originally determined by Overly.  ECF No. 86-17 ¶ 12.  Despite this, Plaintiff was arrested for allegedly occupying the premises.  *Id*.  Plaintiff denies any wrongdoing.  ECF No. 100-1 ¶ 12.  In August 2015, Defendants claim that Elmira officially obtained the deed to the Property.  ECF No. 86-17 ¶¶ 13-15.  Plaintiff disputes what authority this purported deed conveyed to Elmira, and argues that he was still entitled to access the Property.  ECF No. 100-1 ¶¶ 13-15.  On September 2, 2015, while inspecting the Property, Elmira officials found Plaintiff and his girlfriend inside the home on the Property and issued them appearance tickets for trespassing.  *Id*. ¶ 17, 18.

After this incident, Plaintiff reached an agreement with Chemung County officials that allowed Plaintiff to access the Property during daylight hours to retrieve his personal belongings for a limited period of time.  ECF No. 86-17 ¶ 19.  Plaintiff admits that he signed this agreement, but does not recognize Elmira's authority to enter the agreement or the agreement's effect on his property rights.  ECF No. 100-1 ¶ 19.  On November 3, 2015, Defendants claim that Elmira officials once again inspected the Property, found Plaintiff occupying the premises outside the scope allowed under the existing agreement, and arrest him for trespassing.  ECF No. 86-17 ¶¶ 20, 21.  Plaintiff admits that he was arrested on the Property, but denies that the Property was placarded as unfit for occupation at that time.  ECF No. 100-1 ¶¶ 20, 21.  He also does not expressly deny that he was on the Property outside the scope of the parties' access agreement.  ECF No. 100 ¶¶ 114, 115.

In December 2015, the home on the Property was demolished.  ECF No. 100-1 ¶ 22.  In 2016, Defendants claim that the charges relating to Plaintiff's June, September, and November incidents with Elmira officials were dismissed "in the interest of justice out of mercy to the

Plaintiff." ECF No. 86-11 at 15, 16; ECF No. 86-17 ¶ 23. Plaintiff claims that these charges were dismissed on the merits. ECF No. 100-1 ¶ 23. Plaintiff filed the instant lawsuit on August 10, 2018, alleging that the 2012 Proceedings and 2015 Proceedings violated his Fourth Amendment right to be free from malicious prosecution and his Fourteenth Amendment right to equal protection under the law.

## LEGAL STANDARD

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004) ("A district court must convert a motion for judgment on the pleadings to one for summary judgment if the motion includes material outside the pleadings and that material is not excluded by the court.") (internal quotation marks omitted). A court must give "sufficient notice to an opposing party and an opportunity for that party to respond" if it converts a motion to dismiss into a summary judgment motion. *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)). "Fundamental to this notice requirement is 'the principle that parties are entitled to a reasonable opportunity to present material pertinent to a summary judgment motion.'" *Lawrence v. City of Rochester*, No. 09-CV-6078-FPG, 2015 WL 510048, at *4 (W.D.N.Y. Feb. 6, 2015) (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)).

Here, Defendants have submitted a substantial amount of material outside the pleadings in support of their motion. *See generally* ECF No. 86. Plaintiff was adequately notified and given opportunity to submit his own supporting material, since he too has submitted several exhibits in

5

support of his opposition. *See generally* ECF No. 100. Accordingly, this Court converts Defendants' motion into a motion for summary judgment and will consider both parties' supporting material in this decision.

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). This does not mean, however, that a *pro se* litigant is excused from following the procedural requirements of summary judgment. "[A] *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

**DISCUSSION**

Defendants assert several grounds for summary judgment. First, they argue that Plaintiff's malicious prosecution claim against Campanella was not filed within the applicable statute of limitations period. Second, they argue that Campanella and Buzzetti are absolutely immune from Plaintiff's claims because they were acting in their capacity as Elmira prosecutors. Third, they argue that Plaintiff's equal protection claim fails because he has produced no evidence of similarly situated individuals being treated differently than he was. Fourth, they argue that Plaintiff's malicious prosecution claims fail because there was probable cause to prosecute Plaintiff, the proceedings did not terminate in his favor, and he has not established Defendants' actual malice. And fifth, they argue that even if Defendants violated any of Plaintiff's constitutional rights, they are protected by qualified immunity because any alleged violation was not clear to the reasonable official.

Plaintiff opposes these arguments, and alternatively claims that additional discovery is necessary under Rule 56(d) to oppose any arguments not defeated in the instant motion. These arguments are addressed in turn.

## I.      Additional Discovery

Plaintiff argues that additional discovery is necessary under Rule 56(d) in order to properly oppose Defendants' summary judgment motion. *See* ECF No. 100 ¶¶ 431-54. Plaintiff separately argues that summary judgment should be denied because Defendants have not complied with Plaintiff's discovery requests. *See id.* ¶¶ 421-30. Neither of these arguments merit denying or staying summary judgment to allow for additional discovery.

"A party resisting summary judgment on the ground that it needs additional discovery . . . must submit an affidavit . . . showing: (1) what facts are sought and how they are to be obtained,

(2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013) (affirming denial of *pro se* plaintiff's request for further discovery). "It is well established that [a] trial court may properly deny further discovery under Rule 56(d) if the nonmoving party has had a fully adequate opportunity for discovery." *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020) (internal quotation marks omitted) (affirming denial of Rule 56(d) request that "was filed months after the close of discovery and raised the same arguments as [the plaintiff's] earlier motions to compel").

Here, Plaintiff merely sets forth the facts he wants additional discovery to address in his affidavit. *See* ECF No. 100 ¶¶ 431-54. He fails to state how these facts would be obtained, what efforts he has made obtain them, and why those efforts were unsuccessful. *See Lunts*, 515 F. App'x 13. Plaintiff has also had an adequate opportunity to conduct this discovery. Discovery closed on January 9, 2023, *see* ECF No. 71 ¶ 1, after Judge Payson granted an extension pursuant to Plaintiff's motion regarding several discovery disputes, *see* ECF No. 70 at 12. The deadline to file any motions to compel was also January 9, 2023, pursuant to the same order. *See* ECF No. 71; ECF No. 70. Plaintiff failed to object to the extension of these deadlines, *see generally* ECF No. 97, and all other objections to Judge Payson's decision were overruled, *see* ECF No. 98. Because Plaintiff has had the full discovery window to obtain this information, been granted multiple extensions of time, and even litigated a previous motion to compel, he has been given an adequate opportunity to discover the information he now seeks under Rule 56(d). *See Moccia*, 820 F. App'x at 70. Accordingly, additional discovery under Rule 56(d) is not warranted.

Plaintiff separately argues that summary judgment should be denied because Defendants have not complied with Plaintiff's discovery requests. *See* ECF No. 100 ¶¶ 421-30. It is unclear

what authority Plaintiff is invoking to avoid summary judgment on these purportedly separate grounds. *See id.* ¶¶ 422, 423.  To the extent Plaintiff may be referring to a general disfavor toward granting summary judgment before parties have completed discovery, *see Byrd v. Grove St. Mgmt. Corp.*, No. 6:16-CV-6017(MAT), 2016 WL 6663006, at *2 (W.D.N.Y. Nov. 11, 2016) ("The Second Circuit has emphasized that it is [o]nly in the rarest of cases that summary judgment may be entered against a party who has not been afforded the opportunity to conduct discovery.") (internal quotation marks omitted), this argument is inapposite because the discovery and motion to compel windows in this case have closed, ECF No. 71.

Plaintiff has not adequately set forth any other argument justifying a denial of summary judgment based on inadequate discovery grounds.  *See Falso v. Rochester City Sch. Dist.*, 460 F. App'x 60, 61 (2d Cir. 2012) (affirming granting of summary judgment where plaintiff "mentioned the need for additional discovery in his opposition to summary judgment" but failed to set forth an argument under Rule 56(d)); *see also Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 928 (2d Cir. 1985) ("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need."); *Gucci Am. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) ("a party seeking to file a motion to compel after discovery has closed must . . . establish good cause").  Accordingly, this Court will address the merits of Defendants' various grounds for summary judgment, without requiring more discovery.

## II.     Statute of Limitations

Defendants argue that Plaintiff's malicious prosecution claim against Campanella is barred by the statute of limitations because it accrued, at the latest, in 2013 when Campanella left the Elmira City Attorney's Office.  ECF No. 86-11 at 8.

The statute of limitations for § 1983 malicious prosecution claims is three years.  *Salim v. Cnty. of Erie*, 15-CV-418A(Sr), 2017 WL 3837228, at *5 (W.D.N.Y. Aug. 31, 2017).  This claim accrues "when the prosecution 'terminate[s] in the plaintiff's favor.'"  *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) (quoting *Poventud v. City of N.Y.*, 750 F.3d 121, 130 (2d Cir. 2014)); *Bezerra v. Cty. of Nassau*, 846 F. Supp. 214, 219 (E.D.N.Y. 1994) (cited by Defendants, stating that "a claim for malicious prosecution will accrue upon the termination of the criminal proceeding in favor of the plaintiff").  "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued."  *Szymanski v. Local 3, IBEW*, 577 F. App'x 52, 53 (2d Cir. 2014) (quotations omitted).

Here, the malicious prosecution claim against Campanella accrued "on or about August 12, 2015," when the Property Maintenance Charges against Plaintiff terminated in his favor by being dismissed.  ECF No. 86-1 ¶ 8(i); *Spak*, 857 F.3d at 462.  Plaintiff filed this case on August 10, 2018.  *See* ECF No. 1.  Therefore, Plaintiff filed his malicious prosecution claim against Campanella within the statutory period by two days.

### III.    Absolute Immunity

Defendants argue that Campanella and Buzzetti are absolutely immune from Plaintiff's claims because their alleged actions were all taken as prosecutors in connection with official judicial proceedings.  *See* ECF No. 86-11 at 9-11; ECF No. 104-2 at 8, 9.  Plaintiff argues that Defendants Campanella and Buzzetti are not entitled to absolute immunity because they acted without prosecutorial authority, and even if they did, they acted in an investigative capacity not subject to immunity.  *See* ECF No. 109 ¶¶ 327-87.  Campanella and Buzzetti were both delegated

prosecutorial authority over Plaintiff's charges, but only Buzzetti acted solely in his prosecutorial capacity.

Absolute immunity "is a complete bar to damages liability under Section 1983." *Alroy v. City of N.Y. Law Dep't*, 69 F. Supp. 3d 393, 402 n.15 (S.D.N.Y. 2014).  "Prosecutors enjoy absolute immunity for 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' but '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Malik v. City of N.Y.*, 841 F. App'x 281, 284 (2d Cir. 2021) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  A prosecutor "has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction.'" *Shmueli v. City of N.Y.*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)).  To clearly lack jurisdiction, a prosecutor must proceed "without any colorable claim of authority." *Barr*, 810 F.2d at 361.  Even if a prosecutor lacks actual authority to prosecute the relevant conduct, he would still "have absolute immunity in a § 1983 action . . . so long as '[he] ha[s] at least a semblance of jurisdiction' that does not run far afield of [his] job description." *Anilao v. Spota*, 27 F.4th 855, 865 (2d Cir. 2022) (quoting *Barr*, 810 F.2d at 361).

Courts in the Second Circuit have specifically found that town or city attorneys may invoke absolute immunity if they have been delegated the authority to prosecute certain offenses and their actions otherwise meet the ordinary requirements for absolute immunity. *See Verbeek v. Teller*, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001) ("[Defendant's] alleged act of 'preferring' charges against [plaintiff] was a prosecutorial function involving the initiation of a prosecution, performed

by [defendant] *in his role as counsel appointed by the [v]illage to 'prosecute' disciplinary charges.* [Plaintiff's] conclusory allegations that [defendant] acted outside his authority . . . do not negate [defendant's] entitlement to absolute immunity.") (emphasis added); *Weinberg v. Vill. of Clayton, New York*, 5:17-cv-00021 (BKS/ATB), 2018 WL 4214363, at \*10 (N.D.N.Y. Mar. 21, 2018) ("[T]he [c]omplaint is clear that the [village attorneys] had a prosecutorial role in both the civil enforcement and the criminal proceedings against [plaintiffs] . . . .   Although [p]laintiffs contend that [the defendant] acted 'as the [v]illage's organizational and government counsel,' they . . . refer to [the defendant's] role in the prosecution of the cases.   The Court concludes that the [village attorneys] are absolutely immune from monetary liability under § 1983 for their role in prosecuting the civil and criminal proceeding . . . .") (internal citations and quotation marks omitted).

Here, Campanella and Buzzetti were authorized to prosecute Plaintiff.   The District Attorney for Chemung County affirms that such power was delegated to counsel for Elmira.   ECF No. 86-16 ¶ 5.   This specifically granted Campanella and Buzzetti authority to prosecute Plaintiff for violations of the city ordinance and property maintenance code.   *Id.* ¶ 7.   As stated above, such a delegation to city or town attorneys conveys absolute prosecutorial immunity.   *See Verbeek*, 158 F. Supp. 2d at 281; *Weinberg*, 2018 WL 4214363, at \*10.   But even if the delegation was deficient in some way, such an order from the district attorney would provide Campanella and Buzzetti with "at least a semblance of jurisdiction" over the charges against Plaintiff.   *Anilao*, 27 F.4th at 865 (internal quotation marks omitted).

However, only Buzzetti's alleged conduct appears to have been undertaken entirely "in preparing for the initiation of judicial proceedings," and therefore protected by absolute immunity. *Malik*, 841 F. App'x at 284.   Plaintiff claims that Campanella actively investigated him leading up to his May 2012 arrest.   *See* ECF No. 100 ¶¶ 350-56.   These are not merely conclusory allegations

either.  Plaintiff cites his own personal observation of Campanella sneaking onto his property to examine it.  *See id*. ¶¶ 352, 375.  He also submits a letter from Campanella to an Elmira Water Board official requesting details about the property dated July 5, 2011, almost a full year before Plaintiff's arrest.  ECF No. 100-25.  This evidence is sufficient to withstand a summary judgment motion.  *See Lopez v. Chappius*, 6:17-CV-06305 EAW, 2023 WL 2612507, at *6 (W.D.N.Y. Mar. 23, 2023) ("The allegations relating to these claims are not conclusory.  In addition to being based on [p]laintiff's personal knowledge, the factual allegations are supported by . . . correspondence written contemporaneously with the alleged[] [§ 1983 violations].").  Accordingly, Campanella is not entitled to absolute immunity to the extent Plaintiff's claims are grounded in his aforementioned investigative actions.  However, Campanella is immune, and therefore entitled to judgment as a matter of law, to all claims against him that are premised on the exercise of his prosecutorial role.

Buzzetti, on the other hand, is entirely immune.  Plaintiff does not argue that Buzzetti acted in any investigative capacity leading up to his arrest.  *See generally* ECF No. 100 ¶¶ 349-87 (arguing only that Campanella acted as an investigator).  Plaintiff does not dispute that Buzzetti only became involved in his case a year after he was arrested, *see* ECF No. 86-12 ¶ 5, and admits that Buzzetti was not present at his arrest in 2015, *see* ECF No. 100 ¶ 212.  Therefore, because Plaintiff has not set forth any conduct by Buzzetti outside ordinary prosecutorial conduct in preparation of judicial proceedings, Buzzetti is entitled to absolute immunity.  *See Malik*, 841 F. App'x at 284.[2]

---

[2] Plaintiff also argues that absolute immunity does not apply to conduct intentionally undergone to violate due process. ECF No. 100 ¶ 371.  However, absolute immunity still applies to § 1983 claims based on bad faith or malicious conduct.  *See Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987) ("[S]ince absolute immunity spares the official any scrutiny of his motives . . . an allegation that [conduct] was done in bad faith or with malice [does not] defeat[] a claim of absolute immunity.").

## IV.    Equal Protection Claim

Defendants argue that Plaintiff's "class of one" equal protection claim[3] fails because he has not set forth any examples of other similarly situated individuals who were treated differently than Plaintiff.  ECF No. 86-11 at 19-21.  This Court finds that Plaintiff's conclusory statements that he was treated differently than the general public are insufficient to avoid summary judgment.

"The Equal Protection Clause requires that the government treat all similarly situated people alike."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  "While this clause 'is most commonly used to bring claims alleging discrimination based on membership in a protected class,' it may also be used to bring a 'class of one' equal protection claim."  *Prestopnik v. Whelan*, 249 F. App'x 210, 212 (2d Cir. 2007) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)).  A class of one claim requires "the existence of persons in similar circumstances [to the plaintiff] who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain."  *Neilson*, 409 F.3d at 105.  These claims require "an extremely high degree of similarity" between the plaintiff and the more favorably treated comparator.  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019).  "A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the [individual] to [which] the plaintiff compares [himself] [is] similarly situated."  *Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 19 (2d Cir. 2018) (quoting *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

---

[3] Defendants address both "class of one" and "selective enforcement" equal protection claims in their motion, but Plaintiff recognizes that he has asserted a "class of one" claim in this case.  *See* ECF No. 100 ¶¶ 278, 209, 311, 314.

Here, Plaintiff does not set forth any evidence that any other similarly situated individual was treated differently than him. Instead, Plaintiff points to Defendants' purported failure to find any other individuals who were criminally charged for the same conduct as Plaintiff, ECF No. 100 ¶ 310, and argues that it is "not necessary" for him to identify any similarly situated individuals because "everybody [was] treated differently than [he] was treated," *id*. ¶ 313. Plaintiff offers no legal support for this argument besides referring to unspecified Seventh Circuit case law that apparently does not require specific examples of different treatment to sustain a "class of one" equal protection claim. *Id*. ¶ 312. Plaintiff's conclusory allegation that "everybody" was treated differently than him fails to establish an equal protection claim in the Second Circuit. *See Gray Gables Corp. v. Arthur*, 21-1551-CV, 2022 WL 905393, at *3 (2d Cir. Mar. 29, 2022) ("[a] conclusory allegation is not enough to state a so-called class-of-one equal protection claim"); *Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 19 (2d Cir. 2018) (affirming summary judgment against class of one claims where the plaintiff "fail[ed] to set forth any evidence or argument as to how they [were] similarly situated to the other projects they . . . identified"); *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (affirming dismissal of class of one claim where the plaintiffs "[did] not allege specific examples of [the defendants'] proceedings, let alone applications that were made by persons similarly situated."). Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's equal protection claims.

## V.      Malicious Prosecution Claim

Defendants level two arguments against Plaintiff's remaining malicious prosecution claims against Campanella, Martino, and Overly. First, they argue that Plaintiff has failed to establish multiple elements of this claim because probable cause existed to initiate the 2012 Proceedings

and 2015 Proceedings, the 2015 Proceedings did not end in a favorable termination for Plaintiff, and Plaintiff cannot show that Defendants acted with actual malice. ECF No. 86-11 at 11-16. And second, Defendants claim that even if Plaintiff is able to technically establish the elements of a malicious prosecution claim, Defendants' alleged actions were reasonable enough to be protected by qualified immunity. ECF No. 86-11 at 16-19.

Plaintiff's malicious prosecution claims against Campanella and Martino regarding the 2012 Proceedings are sufficiently supported to avoid summary judgment. However, Plaintiff has failed to demonstrate a lack of probable cause for two of the three arrests involved in the 2015 Proceedings. Plaintiff has also failed to set forth any evidence that Overly acted with actual malice.

### a.  Malicious Prosecution Elements

To establish a malicious prosecution claim . . . a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).

"The Second Circuit has clarified that 'probable cause' in the malicious prosecution context means 'probable cause to believe that [the prosecution] could succeed.'" *Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *8 (S.D.N.Y. Mar. 9, 2017) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). Accordingly, where "the evidence giving rise to the prosecution 'would clearly not be admissible,' then 'there [is] no probable cause to believe [a] prosecution could [have] succeed[ed].'" *Id*. at 26 (quoting *Boyd*, 336 F.3d at 76). In cases where evidence from a search or arrest is later suppressed, courts have found that there is a reasonable dispute as to whether probable cause existed to believe a prosecution based on that evidence would

be successful.  *See Gannon v. City of N.Y.*, 917 F. Supp. 2d 241, 244-45 (S.D.N.Y. 2013) (denying motion to dismiss malicious prosecution claims, finding that a lack of probable cause existed where "[p]laintiff clearly allege[d] that [the defendant] filed charges against [p]laintiff after the arrest pursuant to an unlawful search"); *Mazyck v. Johnson*, No. 08-CV-548 (CPS)(SMG), 2009 WL 2707360, at *5 (E.D.N.Y. Aug. 25, 2009) ("[A] reasonable jury could find that [the defendants] . . . had no probable cause to believe that the prosecution would succeed, given that the [evidence seized] would be suppressed.").

Regarding the 2012 Proceedings, there is a genuine dispute of fact as to whether Defendants had probable cause to believe that the prosecution against Plaintiff would succeed. Defendants rely on several citations, orders, and other correspondences with Plaintiff leading up to his 2012 arrest, along with affidavits supporting the 2012 search warrant and the instant motion, to establish probable cause.  *See* ECF No. 86-11 at 12, 13.  However, Judge Miller's eventual ruling that the search warrant was unlawful under the Fourth Amendment undermines the reliability of this material.  *See* ECF No. 100 ¶¶ 31, 32.  Plaintiff also provides direct testimony that the state of the Property during the search warrant was not dangerous in the manner described by Defendants. *See* ECF No. 100 ¶¶ 238, 239, 245, 246; *Bradshaw v. City of N.Y.*, 855 F. App'x 6, 9 (2d Cir. 2021) ("A single witness's sworn testimony, if believed by a jury, can support a verdict, and is enough to raise a genuine issue of fact precluding summary judgment."). Accordingly, because neither party has established whether Defendants could have reasonably believed their search was valid, and the actual state of the Property is in dispute, there is a dispute of fact as to whether Defendants had probable cause to believe their prosecution would be successful.

Likewise, a reasonable dispute exists as to whether there was probable cause to believe that the 2015 Proceedings would be successful, but only insofar as Plaintiff's claims arise from his June 2015 arrest. Defendants claim that probable cause existed because Elmira police officers and firefighters repeatedly found Plaintiff dwelling inside his house after purportedly being ordered to stay off the Property. ECF No. 86-11 at 13-16; ECF No. 104-2 at 6-8. Defendants rely on an allegation that the Property was condemned as unfit for habitation, that Chemung County owned the Property, and that a later agreement with Plaintiff limited his use of the Property to daytime access for the purpose of removing personal belongings. *Id.* In opposition, Plaintiff claims that Judge Forrest permitted him to stay in his residence, without restriction, during a hearing in the 2012 Proceedings. *See* ECF No. 100 ¶¶ 71-88.

For Plaintiff's June 2015 arrest, there is a dispute as to what permission Plaintiff had to be on the Property. Defendants offer no explanation as to why the alleged placarding of the Property trumps Judge Forrest's order allowing Plaintiff to access the Property without condition. Accordingly, there is a dispute as to whether Defendants lacked probable cause to arrest Plaintiff in June 2015.

However, the same cannot be said for Plaintiff's September 2015 and November 2015 arrests. In August 2015, Elmira obtained title to the property. ECF No. 86-17 ¶¶ 13-15. Plaintiff's allegation that title was not obtained legitimately has been litigated and rejected in state court. *See* ECF No. 86-7 at 3. Accordingly, Judge Forrest's 2012 order allegedly granting Plaintiff access to *his own* property no longer applied, as Elmira owned the Property in September 2015. The same goes for Plaintiff's November 2015 arrest. While there was an agreement between the parties granting limited Property access to Plaintiff in effect at that time, *see* ECF No. 86-17 ¶ 19, Plaintiff never denies that he was caught on the Property acting outside the scope of this agreement, *see*

ECF No. 100 ¶¶ 114, 115.  Therefore, because Plaintiff no longer had any authority to be on the Property during his September 2015 and November 2015 arrests, there was probable cause to believe a prosecution would be successful for these instances of trespass.

Defendants also argue that the remaining claims based on the 2015 Proceedings fail because those proceedings did not end in a favorable termination for Plaintiff, since the charges were voluntarily dismissed "in the interest of justice out of mercy to the Plaintiff."  ECF No. 86-11 at 15, 16.  However, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."  *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).  Here, the parties do not dispute that Plaintiff was never convicted of any charges. Further, Plaintiff's charge was not dismissed in exchange for a guilty plea to any other charge.  *See Barnes v. City of N.Y.*, 68 F.4th 123, 128 (2d Cir. 2023) (finding no favorable termination where voluntary dismissal of one charge was entered in exchange for guilty plea to other charge). Accordingly, Plaintiff has established a favorable termination of the 2012 Proceedings and 2015 Proceedings.

Lastly, Defendants argue that Plaintiff cannot demonstrate actual malice beyond his mere conclusory allegations.  ECF No. 86-11 at 13.  In a malicious prosecution claim, malice is defined as a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996).  Generally, "the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause."  *Moroughan v. Cty. of Suffolk*, 514 F. Supp. 3d 479, 524 (E.D.N.Y. 2021)) (internal quotation marks omitted);

*Cunninham v. New York City*, No. 04 Civ. 10232(LBS), 2007 WL 2743580, at *6 (S.D.N.Y. Sept. 18, 2007) ("a jury [can] infer malice from a lack of probable cause for [a] . . . prosecution").

Here, Plaintiff has adequately established Campanella's and Martino's malice by, as discussed above, demonstrating that they may have pursued charges against Plaintiff despite knowingly lacking probable cause.  *See* ECF No. 100 ¶¶ 31, 39, 363, 374 (establishing reasonable inference Campanella and Martino knew 2012 Proceedings lacked probable cause based on Judge Miller's invalidation of search warrant); 74, 75, 110, 210 (establishing reasonable inference Campanella and Martino knew 2015 Proceedings lacked probable cause based on knowledge of Judge Forrest's authorization for Plaintiff to access property in effect during June 2015 arrest). This evidence supports a reasonable inference of malice on their part.  *See Moroughan*, 514 F. Supp. 3d at 524.  However, this inference would clearly be unreasonable as to Overly.  Unlike Campanella and Martino, Plaintiff has not even alleged that Overly knew about or had any role in the search warrant that was later invalidated by Judge Miller.  *See* ECF No. 100 ¶¶ 31, 39, 363, 374 (no mention of Overly).  Likewise, Plaintiff does not allege that Overly had any knowledge of Judge Forrest's order regarding Plaintiff's access to the Property.  *See id.* ¶¶ 74, 75, 110, 210 (not alleging Overly was present in court).  Instead, Plaintiff's allegations regarding Overly merely center on his involvement in placarding his property as unfit for habitation.  *See* ECF No. 100 ¶¶ 81, 89-93.  Nothing in Plaintiff's argument indicates Overly had any motive besides "a desire to see the ends of justice served."  *Lowth*, 82 F.3d at 573.  Accordingly, summary judgment is proper for the malicious prosecution claim against Overly.[4]

---

[4] Defendants appear to argue in their reply papers that certain Defendants were not personally involved in Plaintiff's prosecution.  ECF No. 104-2 at 7.  This Court will not consider arguments raised for the first time in a reply.  *See Barnes v. Healthnow N.Y.*, No. 16-CV-88-JLS(Sr), 2023 U.S. Dist. LEXIS 48035, at *21-22 (W.D.N.Y. Mar. 21, 2023) ("A district court is free to disregard argument[s] raised for the first time in reply papers, especially on a motion for summary judgment.").

### b. Qualified Immunity

"The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Qualified immunity protects against unconstitutional conduct "[i]f a reasonable officer could have believed that the challenged conduct was lawful at the time of the violation," but will not protect a defendant when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal citation and quotation marks omitted). The "reasonableness" of a probable cause determination is "based on the facts known at the time" to the defendant. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). Where there is a genuine dispute over whether a defendant acted maliciously, courts generally refuse to grant summary judgment on qualified immunity grounds. *See Blake v. Race*, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007) (denying summary judgment on qualified immunity grounds because plaintiff had established "an issue of fact as to whether the defendants participated in the alleged fabrication of evidence"); *Sanders v. City of New York*, No. 12 CV 113(PKC)(LB), 2015 WL 1469514, at *16 (E.D.N.Y. Jan. 7, 2015), (denying summary judgment on qualified immunity

grounds "because the availability of qualified immunity will depend on the jury's findings of fact [on the issue of malice]"), *report and recommendation adopted*, No. 12 CV 113 (PKC)(LB), 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015).

Here, there is a genuine dispute as to whether a reasonable government official in Campanella's and Martino's respective positions could have believed that their conduct was permissible. For the 2012 Proceedings, Plaintiff alleges that Campanella fabricated evidence to justify searching Plaintiff's residence, *see* ECF No. 100 ¶¶ 363, 374, and that Martino filed the an accusatory instrument against Plaintiff based entirely on the improper search warrant, *see id*. ¶¶ 31, 39. As discussed above, these allegations are not conclusory because they are supported by the eventual invalidation of the search warrant by Judge Miller. *See id*. ¶¶ 31, 32. Likewise, for the 2015 Proceedings, Plaintiff argues that Martino and Campanella both knew from the 2012 Proceedings that Judge Forrest authorized Plaintiff to reside at the property without limitation, but nonetheless prosecuted Plaintiff for trespassing. *See* ECF No. 100 ¶¶ 74, 75, 110, 210. These assertions are based on Plaintiff's personal observations in the courtroom with these Defendants. Such issues of fact as to Campanella's and Martino's malice precludes granting them qualified immunity. *See Blake*, 487 F. Supp. 2d at 217.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 86) is GRANTED in part and DENIED in part. Plaintiff's equal protections claims against all defendants, and Plaintiff's malicious prosecution claims against Buzzetti and Overly, are to be dismissed. Further, Plaintiff's malicious prosecution claims against Campanella and Martino are dismissed to the extent they are based on Plaintiff's September 2015 and November 2015 trespassing incidents.

IT IS SO ORDERED.

Dated: September 11, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York